IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Midwest Retailers Association, Ltd. et al.,                Case No. 3:08CV851

                        Plaintiff,

        v.                                                        ORDER

City of Toledo,

                        Defendant.

This is a civil rights case in which the plaintiffs obtained injunctive relief restraining enforcement of a Toledo, Ohio, ordinance relating to convenience stores. [Doc. 17].

Pending are plaintiffs' original [Doc. 20] and supplemental [Doc. 24] motions for attorneys' fees. Also pending is defendants' motion to strike a portion of plaintiffs' reply in support of their motion for attorneys' fees. [Doc. 32]. For the reasons discussed below, I overrule defendants' motion to strike and direct plaintiffs' counsel to submit a final time and fee statement in accordance with the following opinion.

**Background**

The City of Toledo adopted an ordinance, effective May 1, 2008, requiring installation of video surveillance cameras on the premises of convenience stores less than 5,000 square feet. Plaintiff Midwest Retailers Association [MWRA] filed a complaint challenging the ordinance on constitutional grounds,[1] and later filed a motion for a preliminary injunction to prevent enforcement

_____

[1] As filed, the complaint listed only MWRA as a plaintiff. Because MWRA did not have standing to assert constitutional violations, I granted leave to join the individual plaintiffs, who operate convenience stores covered by the ordinance.

of the ordinance. The City voluntarily agreed to suspend enforcement for thirty days after the effective date of the ordinance.

On May 27, 2008, three days before the expiration of the non-enforcement period, Toledo Police officers delivered letters to Association members and other convenience store owners stating that failure to comply with the ordinance could result in jail time and fines. Plaintiffs then requested a temporary restraining order to prevent enforcement of the ordinance while the preliminary injunction motion was pending. On May 30, 2008, I held a telephone conference to discuss the motion for a temporary restraining order. I ordered the City to file a letter with plaintiffs' counsel stating that it would not initiate enforcement proceedings prior to July 1, 2008 or following entry of a ruling on plaintiffs' motion for a preliminary injunction. I issued a temporary restraining order one month later.

On July 10, 2008, plaintiffs filed a motion for attorneys' fees accompanied by a detailed fee schedule. The fee schedule included hours for work related to the complaint and the motions for a preliminary injunction and temporary restraining order. It also included hours spent lobbying the City to repeal the ordinance, as well as hours described by terms like "telephone conf.," "research," and "meeting." It billed hours worked by the attorney and two clerks at the same rate of $150 per hour. In response to objections raised by the City's opposition to the motion, plaintiffs submitted a revised fee schedule containing more detailed explanations for some of the hours and a reduced rate of $50 per hour for work done by clerks.

Plaintiffs contend they are entitled to recover attorneys' fees as a prevailing party because I prevented the City from enforcing the ordinance by granting their motion for a temporary restraining order. The City argues that plaintiffs are not a prevailing party because it agreed to

suspend enforcement of the ordinance before I issued the temporary restraining order, and therefore judicial intervention did not change the parties' legal relationship in that it was about the business of amending the ordinance regardless of the pendency of the litigation.

In the meantime, the City has amended the ordinance. Plaintiffs contend that such amendments resulted from this suit, and that their attorneys are entitled to be compensated accordingly. The City likewise opposes this contention.

In partial support of their claim that they are prevailing parties, plaintiffs have attached copies of e-mails between a MWRA member, Dan Ridi, and Joe McNamara, a member of Toledo City Council. According to the plaintiffs, Councilman McNamara's statements reflect obduracy on the part of City Council in the face of this litigation. This, in turn, plaintiffs contend, undercuts the City's contention about its working on an amendment to the ordinance.

Defendants want those e-mails stricken on the basis of hearsay and lack of authentication.

## 1. Motion to Strike [Doc. 32]

I find nothing in defendants' motion to strike or arguments relating thereto to suggest that the e-mails are not, in fact, authentic. The defendants' hyper-technical and abstract approach to evaluating the authenticity of the e-mails is undercut by the lack of any allegation that the e-mails are not authentic. If Councilman McNamara were to affirm that he did not receive or send the e-mails, then there would be a genuine issue as to their authenticity. But he has not done so.

There is, otherwise, no reason whatsoever to doubt the authenticity of the e-mails. An affidavit from plaintiffs' counsel supports, in any event, a finding of authenticity.

Nor are the e-mails hearsay: they are not offered – or, at least, I do not consider them – for the truth of the matter asserted. Instead, they are verbal acts, offered to show what was said when

3

and by whom. The statements themselves are the evidence, not the truthfulness or lack thereof of what the statements purport to express.[2] *See, e.g.Dorchy v. Jones* 320 F.Supp.2d 564, 578 (E.D.Mich. 2004) *(*"threats are generally considered 'verbal acts' not admitted for the truth of the matter asserted and such evidence is admissible").

The motion to strike shall, accordingly, be overruled.

## 2. Motion for Attorneys' Fees [Docs. 20, 24]

### Standard of Review: Fee Petitions

Section 1988 of the Civil Rights Acts authorizes an award of attorneys' fees to parties who have prevailed in litigation brought under § 1983. A party prevails, for purposes of § 1988, if, because of the party's initiative, the judiciary has materially altered the legal relationship between the parties. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001). The district court has discretion to determine a fee award for an action brought under § 1983. 42 U.S.C. § 1988.

### Discussion

### A. Plaintiffs Are a Prevailing Party

The Sixth Circuit summarized the test for determining whether a § 1983 litigant qualifies as a prevailing party in *Dillery v. City of Sandusky,* 398 F.3d 562, 569 (6th Cir. 2005).

A plaintiff may be considered a prevailing party if the plaintiff "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "The touchstone of the prevailing party inquiry must be the material alteration of the

---

[2] For example: whether the City Law Director, as McNamara wrote, told Council to await the outcome of the litigation before considering amending the ordinance challenged in this suit doesn't matter. The same is true with regard to the e-mail from Ridi about what he claims he did in his store.

4

legal relationship of the parties," *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), such that "the defendant's behavior [is modified] in a way that directly benefits the plaintiff," *Farrar v. Hobby*, 506 U.S. 103, 111-12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

The City argues that plaintiffs are not a prevailing party. It contends that the City agreed to suspend enforcement of the ordinance before I granted plaintiffs' motion for a temporary restraining order. Therefore, it asserts that the litigation did not cause the change in the parties' legal relationship. The City's argument fails.

It is clear that the legal proceedings initiated by the plaintiffs and the resulting judicial intervention compelled the City to suspend its enforcement efforts. The City only agreed to the non-enforcement period after plaintiffs filed their complaint. The agreement was not legally binding and was set to expire well before plaintiffs could obtain a hearing on their preliminary injunction motion. Three days before the expiration of the non-enforcement period, Toledo Police officers delivered letters to Association members and other convenience store owners stating that failure to comply with the ordinance could result in jail time and fines. The court orders prohibiting enforcement of the ordinance forced the City to modify its behavior in a way that directly benefitted the plaintiff, resulting in plaintiffs obtaining prevailing party status. *See, e.g.*, *Duboc v. Green Oak Tp.,* 312 F.3d 736 (6th Cir. 2002).

Plaintiffs are entitled to fees for the work leading to the filing and initial hearing on their motion for a temporary restraining order. They are likewise entitled to compensation for work on their motion for a preliminary injunction, including research, preparation, filing and hearing on the motion, all of which resulted in plaintiffs getting what they wanted: a court order restricting enforcement of the ordinance.

With regard to plaintiffs' supplemental motion for attorneys' fees, in which they contend that their prevailing party status encompassed the amendments to the ordinance at issue in this case, the City claims that its negotiations with plaintiffs did not bring about its amendments to the ordinance. The City suggested that it amended the ordinance in response to phone calls from concerned citizens, and stated that there is nothing unusual about amending ordinances after they have been passed. [Doc. 26].

In their reply to the City's opposition, plaintiffs argued that the changes to the ordinance were the result of "settlement negotiations" between the Association and the City. They claimed that the City did not acknowledge any of their concerns about the constitutionality of the ordinance until after the preliminary injunction hearing. They cited the Joint Status Report filed July 10, 2008, which states, "[s]ince the June 24th hearing, the parties have been negotiating a resolution of the lawsuit through an amendment of the original ordinance." They also note that the amendments appear to address all their concerns with the original ordinance. [Doc. 31].

To the extent that work by plaintiffs' counsel following issuance of the injunction contributed to the amendment of the ordinance, their attorneys are entitled to compensation. Most simply put: the City enacted an ordinance with serious constitutional flaws. It only undertook to eliminate those flaws after I suspended enforcement and the plaintiffs' attorneys negotiated a favorable outcome in the form of amendments that addressed those flaws. There can be no doubt that, but for this suit, the injunctive order procured by plaintiffs' counsel and their continued efforts to ensure that the ordinance conformed to the Constitution, the City would not have amended the ordinance. The cause-effect relationship is not rationally disputable.

6

With regard to compensation for post-injunction negotiations relating to the revised ordinance, to fail to have the City pay for that work would give it a windfall. That windfall would be receipt *gratis* the insight and suggestions of plaintiffs' counsel. These may well have helped to cure the defects in the ordinance and give the revised version a measure of insulation from claims that it, like its predecessor, violates constitutional norms.[3]

Courts should encourage work of that sort. Indeed, in many instances, courts and the parties should expect that a prevailing party's counsel will be helping to fix problems. There is no gain to the City or plaintiffs if, by denying compensation for that work, I would be telling plaintiffs' counsel that they should have lain back, ignoring, or at least not commenting on problems, and calling, ultimately, on this court to find that the revision is, like the original version, constitutionally flawed.

A party in the City's position can always say, "No, Thank You," to the involvement of a prevailing party's counsel during the process of revision. It can also say, "No, Thank You," to any suggestions or proposals. But in many instances, working together will work best in the long run, and be less expensive, even if the City winds up paying for the participation and contribution of opposing counsel at that stage.

In sum, plaintiffs' challenge was well taken. Without the injunction, the City would in all likelihood have ignored plaintiffs' objections and grievances. The work done by plaintiffs' counsel after the injunction to try to address constitutional and other concerns further reflected their status as a prevailing party.

---

[3] I do take note, though, that plaintiffs have filed a motion for leave to file an amended complaint on the basis that the revised ordinance does not completely cure all the defects.

While plaintiffs prevailed at the most basic level and with regard to the most fundamental of their challenges, they did not prevail as to some of their contentions about the ordinance's infirmities. The following discussion incorporates that circumstance.

## B. Determination of the Amount of the Fee Award

To determine the amount of a fee award under § 1988, I must first calculate the lodestar amount by multiplying the reasonable hourly rate by the hours reasonably expended. *Hensley*, 461 U.S. at 433. The Supreme Court has defined a reasonable hourly rate as the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *see also Geier v. Sundquist* 372 F.3d 784, 791 (6th Cir. 2004). Reasonably expended hours do not include hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Several factors can influence the final amount of an award under the lodestar. *Hensley*, 461 U.S. at 430, n.3:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

I may also reduce the fee award by the number of hours for which no adequate documentation exists. *Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); *see also Black v. Lojac Enterprises, Inc.*, 117 F.3d 1420, 1997 WL 377051, at *2 (6th Cir.) (Unpublished disposition) (upholding the district

court's decision to subtract "time for which there was inadequate documentation" from the lodestar amount).

The prevailing party has the burden of showing that the amount of fees is reasonable. If it fails to meet this burden, a court should adjust the fees accordingly. *Central Benefits Mutual Insurance Company, et al. v. Blue Cross and Blue Shield Association*, 983 F.2d 1065 (6th Cir. 1992) (Unpublished disposition) (district court properly reduced fee petition in light of vague, non-descriptive entries and "lumping" multiple activities in a single time entry).

Reduction for imprecision and opacity in the fee petition is not a precise endeavor. Application of a percentage, rather than minute-by-minute or event-by-event subtraction is appropriate. *See Gratz v. Bollinger*, 353 F.Supp.2d 929, 939 (E.D.Mich. 2005).

### i. Hourly Rate

The hourly rate of $150 for services of counsel and the revised hourly rate of $50 for services of a paralegal are reasonable, and in line with the rates for those services prevalent in the Toledo area. Indeed, they are somewhat on the low side.

Seeking compensation, as plaintiffs' counsel does here, in increments of a tenth of an hour is entirely appropriate.

### ii. Amount of Hours

As originally submitted, plaintiffs' motion seeks compensation for activities either not related to, or only indirectly related to this litigation. Thus, the work done during the period of March 25-30, 2008, inclusive, is not compensable. Initial meetings and phone conferences and setting up MWRA played no significant or compensable role in this litigation and plaintiffs' success in it.

There are five general categories of entries for the ensuing period: 1) preparation of pleadings; 2) preparation for and attendance at court proceedings; 3) research; 4) telephone and other conferences with MWRA and its board and members; and 5) discussions with City representatives regarding the revised ordinance.

Beginning with the category of conferences: I have significant reservations about the compensability of much of the time spent on *individual* telephone conferences with members of the MWRA board. Though I cannot be certain, I infer that counsel called various members of the board – of which there appear to be several – *seriatim*, discussing the same thing or things over and over. This certainly would be true with regard to calls that simply informed the members about the outcome of court proceedings, etc.

On the other hand, some communication with some of the clients individually is, of course, essential. Individual MWRA members had, no doubt, their own unique circumstances and conditions, and the ordinance may have affected some of them differently than how it affected others.

I conclude that counsel should receive compensation for fifty percent of the time reflected as "Telephone Conf. with [individual] Board Member."

The time spent meeting with MWRA or its board in *group* sessions would, however, appear to be compensable. Meeting with a group was certainly more sensible and essential than calls to individual members. All the time expended on and after April 11, 2008, conferring with MWRA's members or members of its board in group session is compensable.

The time spent researching and writing either pleadings or briefs beginning March 31, 2008, is compensable to the extent that such research brought favorable results. While some entries in this

10

category relate to specific tasks – including some as to which plaintiffs prevailed, and others as to which they did not prevail – many entries were more conclusory.

I conclude, given the mixture of some chore-specific and considerable non-specific information, that the total of the entries for research, including "research and writing," should be compensated at the rate of seventy-five percent. This includes the work done on the fee petitions, except that counsel shall not be compensated for work preparing the first time listing, given its extreme opacity.

Time spent preparing for and attending court proceedings, including telephonic and in-person pretrial conferences shall be compensated fully.

Finally, time spent discussing the revised version of the ordinance with City counsel is compensable.

I leave it to plaintiffs' counsel to submit a revised statement in light of and accordance with the foregoing.

With regard to the fee statement for the paralegals, payment in full appears appropriate. To the extent that the City might quibble about some of the entries, I note again that the $50 hourly rate for such services is on the low side of the spectrum. The net effect, even if a bit of the time was not related to issues as to which plaintiffs prevailed, is that the City is paying less than it might in other cases for equivalent work on issues as to which plaintiffs prevailed.

The statement of compensable expenses is acceptable.

### Conclusion

In light of the foregoing it is hereby

ORDERED THAT

1. Defendants' motion to strike [Doc. 32] be, and the same hereby is overruled; and

2. Plaintiffs' counsel be, and he hereby is ordered to submit a final revised time and fee statement in accordance with the foregoing on or before October 20, 2008; defendants granted leave to respond, if they desire to do so, by October 30, 2008, at which time the pending motion for fees shall be decisional.

3.  A pretrial conference is scheduled for November 3, 2008 at 8:30 a.m.

So ordered.


s/James G. Carr
James G. Carr
Chief Judge